**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JEFFREY LOUIS-JEUNE,

Plaintiff,

v. Case No. 8:25-cv-883-JRK

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

---

## OPINION AND ORDER[1]

### I. Status

Jeffrey Louis-Jeune ("Plaintiff") is appealing final decision of the Commissioner of the Social Security Administration ("SSA"), finding that although he was entitled to supplemental security income ("SSI") as a child, upon continuing review after attainment of his eighteenth birthday, he no longer met the definition of disabled and therefore his benefits should cease. The original finding of disability was based on an application for SSI protectively filed on December 16, 2014. Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed June 9,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

2025, at 221-30. The SSA conducted a review of Plaintiff's disability status upon attainment of age eighteen, and made an initial determination on June 17, 2022 that Plaintiff was no longer disabled as of that same date, Tr. at 75, 76-83, 100-03, 108.[2] Plaintiff sought reconsideration. Tr. at 109-12. On reconsideration, the SSA made the same determination. Tr. at 84-91.

The matter was referred to a State Agency Disability Hearing Officer, who issued a decision on June 22, 2023 upholding the SSA's earlier determination that the disability had ceased. Tr. at 133-38; see Tr. at 92-97, 118-21. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at 143. On July 30, 2024, an ALJ held a hearing, during which Plaintiff, representing himself, and a vocational expert ("VE") testified.[3] Tr. at 44-64. On September 19, 2024, the ALJ issued a Decision finding Plaintiff's disability ended on June 17, 2022 and he has not become disabled again since that date. See Tr. at 20-36.[4]

---

[2] Some of these documents are dated June 16 rather than June 17. However, when Plaintiff was officially notified that his SSI was ceasing, the notice was dated June 17 and indicated he was "no longer disabled as of 6/17/2022." Tr. at 100.

[3] The hearing was held via telephone with Plaintiff's consent. Tr. at 46, 49, 173, 218.

[4] The administrative transcript also contains an ALJ decision dated April 17, 2020, authored in another review of Plaintiff's continued disability status, and upon which the ALJ determined that Plaintiff continued to be disabled and recommended a continuing review in twenty-four months. Tr. at 69-74.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council. Tr. at 16 (request for review). On March 7, 2025, the Appeals Council dismissed as untimely Plaintiff's request for review, Tr. at 7-11, thereby making the ALJ's Decision the final decision of the Commissioner. On April 9, 2025, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff on appeal argues the ALJ erred in failing to fully and fairly develop the record. Memorandum in Opposition to the Commissioner's Decision (Doc. No. 16; "Pl.'s Mem."), filed July 17, 2025, at 3. On August 18, 2025, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem.") addressing Plaintiff's argument. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal

---

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

(Continued…)

Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). In a case involving redetermining disability at age eighteen, the first step does not apply. See 20 C.F.R. § 416.987(b). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry, except for skipping the first step (as appropriate in these types of redetermination cases). See Tr. at 22-36. Prior to the inquiry, the ALJ determined that Plaintiff "attained age 18 on September 6, 2021, and was eligible for [SSI] benefits as a child for the month preceding the month in which he attained age 18." Tr. at 22. The ALJ stated Plaintiff "was notified that he was no longer disabled as of

---

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

June 17, 2022, based on a redetermination of disability under the rules for adults who file new applications." Tr. at 22.

At step two, the ALJ found that "[s]ince June 17, 2022, [Plaintiff] has had the following severe impairments: attention deficit hyperactivity disorder (ADHD); adjustment disorder with anxiety." Tr. at 22 (emphasis and citation omitted). At step three, the ALJ ascertained that "[s]ince June 17, 2022, [Plaintiff] did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 23 (emphasis and citation omitted).

The ALJ determined that Plaintiff has had the following residual functional capacity ("RFC") since June 17, 2022:

> [Plaintiff can] perform a full range of work at all exertional levels but with the following nonexertional limitations: Limited to performing simple and routine tasks, defined by the Dictionary of Occupational Titles as an Specific Vocational Preparation (SVP) level 1 or 2; could maintain attention, concentration, persistence, and pace in two (2) hour increments throughout an eight-hour workday with normal work breaks; could have frequent contact or interaction with supervisors, co-workers, and the general public; would be limited to simple, work-related decisions.

Tr. at 26 (emphasis omitted).

At step four, the ALJ found that Plaintiff "has no past relevant work." Tr. at 35 (some emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("a younger individual age

18-49"), education ("at least a high school education"), lack of work experience, and RFC, the ALJ relied on the VE's testimony and found that "[s]ince June 17, 2022, . . . there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as "cleaner," "kitchen helper," and "laborer stores," Tr. at 35 (some emphasis and citation omitted). The ALJ concluded Plaintiff's "disability ended on June 17, 2022, and [he] has not become disabled again since that date." Tr. at 36 (emphasis and citation omitted).

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to

reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff argues the ALJ failed to adequately develop the record, especially in light of Plaintiff proceeding with representing himself given his known mental health issues, his barely having attained the age of eighteen, and his admission that he did not review the record prior to the hearing. Pl.'s Mem. at 3-7. Plaintiff also contends he was prejudiced by the failure to develop the record because he testified he was seeing a psychiatrist every two weeks for the previous three months and was taking medication prescribed by the psychiatrist, but these records are not included in the administrative transcript. Id. at 6 (citations omitted).

Responding, Defendant contends Plaintiff voluntarily waived his right to representation and has failed to show clear prejudice in the development of the record that would warrant a remand. Def.'s Mem. at 5-12. Regarding the lack of treating psychiatrist records, Defendant characterizes Plaintiff's argument

as "speculat[ion] that such evidence even exists and that it would be beneficial to his claim." Id. at 12 (citation omitted).

A claimant has a statutory right to be represented at a hearing before an ALJ. 42 U.S.C. § 406; see also Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995); Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir. 1982). The Commissioner "has a duty to notify [the] claimant of his or her right to [representation] before the hearing." Smith, 677 F.2d at 828 (citation omitted). Though the right to be represented may be waived by the claimant, the waiver must be knowing and voluntary. See Brown, 44 F.3d at 935; Smith, 677 F.2d at 828. "[S]uch a waiver must establish, at some point, that the claimant is properly apprised of his [or her] options concerning representation to be effective." Smith, 677 F.2d at 828 (citation and internal quotation marks omitted).

"When an unrepresented claimant unfamiliar with administrative hearing procedures appears before an ALJ, the ALJ is under an obligation to develop a full and fair record; i.e. the record must disclose that there has been a full and fair hearing." Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985) (emphasis and citation omitted). If the claimant did not validly waive the right to be represented, "the ALJ is under a 'special duty' to develop a full and fair hearing by conscientiously probing into all relevant facts." Id. n.2 (citations omitted). "This duty requires, essentially, a record which shows that the

claimant was not prejudiced by the lack of [representation]." Id. (quoting Smith, 677 F.2d at 829). In examining whether a claimant was prejudiced by the lack of representation, a reviewing court must ensure the ALJ "scrupulously and conscientiously probe[d] into, inquire[d] of, and explore[d] for all the relevant facts." Brown, 44 F.3d at 934-35 (quoting Smith, 677 F.2d at 829).

Conversely, if the claimant validly waived the right to be represented, the claimant must show "clear prejudice or unfairness" caused by the lack of representation to prove that he was denied a full and fair hearing.[6] Kelley, 761 F.2d at 1540 n.2 (quoting Clark v. Schweiker, 652 F.2d 399, 404 (5th Cir. 1981)). Of particular importance is "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Brown, 44 F.3d at 935. Missing medical documentation or documentation of vocational services supporting a claim of disability can be prejudicial, especially when it relates to treatment occurring during the period preceding the ALJ's Decision. See id.

---

[6] The United States Court of Appeals for the Eleventh Circuit has stated the following regarding the two standards and their application:

> These two standards appear to differ only in degree. Both require that the ALJ fully develop the record. Both require a showing of prejudice to necessitate a remand to the [Commissioner] for reconsideration. The only discernable difference is that a more specific showing of prejudice is required if [a] claimant did not waive his [or her] right to [representation].

Kelley, 761 F.2d at 1540 n.2.

Here, Plaintiff does not seriously contest whether he validly waived his right to representation at the hearing. Prior to the hearing, in March 2024, Plaintiff's mom wrote the ALJ indicating that she was attempting to find a representative for Plaintiff who would not charge "a fortune," but was unsuccessful. Tr. at 547. Also prior to the hearing, the SSA sent Plaintiff correspondence advising him of his right to representation, explaining what a representative could do, and including a list of potential representatives along with contact information. See Tr. at 179-80, 198-99, 214-15, 347-51.

When Plaintiff appeared at the hearing (telephonically) without representation, the ALJ ensured he had received and understood the written correspondence about the right to be represented. Tr. at 47. The ALJ also reiterated the information contained in the written correspondence: that "[a] representative could help [Plaintiff] obtain information about [his] claim, explain medical terms, help protect [his] rights, or make any requests or give any notice about the proceeding before [the ALJ]." Tr. at 47-48. The ALJ explained potential costs associated with representation and explained that "some legal service organizations offer representation free of charge." Tr. at 48. The ALJ further advised Plaintiff that if he elected to proceed without representation, the ALJ would "obtain any relevant medical or non-medical evidence, and question [Plaintiff] at the hearing." Tr at 48.

Plaintiff indicated that he understood the right to representation. Tr. at 48. Plaintiff also indicated, in response to the question "do you wish to proceed with or without a representative?" that he would like to proceed "Without." Tr. at 48. With that, the ALJ found Plaintiff had "knowingly and voluntarily waived his rights to representation." Tr. at 48.

As previously indicated, Plaintiff does not seriously contest the validity of his waiver, but he does point out that he had just attained eighteen years of age and he suffers from a mental impairment. Pl.'s Mem. at 5-6. Plaintiff also points out that when asked by the ALJ if he had reviewed the exhibits in the file, he indicated he had not. Id. at 5; see Tr. at 49. Although the waiver here was not flawless, the undersigned assumes without deciding that Plaintiff knowingly and voluntarily waived his right to representation at the hearing.

The ALJ, however, still had a duty to fully and fairly develop the record. This, the ALJ did not adequately do. During the hearing, Plaintiff testified he had been seeing a "psychiatrist" for "about three months," attending "about every two weeks or so, depending on if [he is] upset because [he] see[s] her about [his] anxiety." Tr. at 57.

It appears that Plaintiff was actually seeing a psychologist in the months preceding the hearing. The administrative transcript does not contain any records from a treating psychiatrist during this timeframe. There is a letter by Olga M. Ramires Huertas, Psy.D., a clinical psychologist, dated July 16, 2024

(about two weeks prior to the hearing) and indicating Plaintiff "has been receiving Primary Care Mental Health services at Sabal Park Clinic since March 2024." Tr. at 589. The letter further states that Plaintiff's primary care physician prescribes "Methylphenidate 36 mg to manage ADHD symptoms," and Plaintiff also "is receiving Cognitive Behavioral Therapy" to address his mental health. Tr. at 589. The administrative transcript only includes one record of any of the treatment to which Dr. Huertas refers, dated February 27, 2024, documenting a "Behavioral Health Consultation" by Dr. Huertas after Plaintiff was referred by his primary care physician. Tr. at 585-88. Dr. Huertas diagnosed generalized anxiety disorder and recommended Cognitive Behavioral Therapy. Tr. at 587-88.

The administrative transcript also contains a letter dated February 15, 2023 from Felix Subervi III, Ph.D., a clinical psychologist, indicating that Plaintiff at the time was "being seen for therapy on a regular basis (once a week)" with a "diagnosis of Attention Deficit Disorder, combined type." Tr. at 583. Dr. Subervi did opine on the effects of Plaintiff's ADHD on March 28, 2023 and April 24, 2019; those opinions are included in the administrative transcript, Tr. at 542-44, 386-89, but the records of treatment to which Dr. Subervi refers are not.

The ALJ, in addressing Dr. Subervi's 2023 opinion, found it "not very persuasive" because although "Dr. Subervi has treated [Plaintiff], there are no

real treatment records documenting his care and observations of [Plaintiff] to corroborate his reports of a 'poor level of concentration for school.'" Tr. at 33 (citation omitted).[7] The ALJ's reliance on a lack of real treatment records indicates that the absence of these treatment records alone was prejudicial.

The ALJ also relied solely on medication lists that appear in the administrative transcript when discussing Plaintiff's ADHD medications from 2023 forward, see Tr. at 30-31 (citing Exs. B25E (Tr. at 369-70), B8F (Tr. at 553-54), and B29E (Tr. at 384)), because the treatment records themselves are omitted. Given that during this time, Plaintiff was being treated by his primary care physician and psychologists, as well as participating in behavioral therapy, but almost none of that evidence is in the administrative file, the ALJ erred in not obtaining it. See, e.g., Brown, 44 F.3d at 935 (finding an ALJ erred with an unrepresented claimant when "there [was] no indication that the ALJ contacted [a treating physician] for up-to-date medical records even though [the claimant] testified that she was examined by his twice just prior to the hearing").

Under these circumstances, the ALJ failed to fully and fairly develop the record on Plaintiff's mental limitations, and there are evidentiary gaps resulting in clear prejudice. Reversal with remand is required.

---

[7] The ALJ also found Dr. Subervi's opinion "really does not assess any restrictions with respect to [Plaintiff's] ability to work." Tr. at 33.

## V. Conclusion

In light of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A) Fully and fairly develop the record on Plaintiff's mental limitations; and

(B) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 21, 2026.

James R. Klindt
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record